# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF ILLINOIS.

THE WATFORD OIL AND GAS COMPANY, Appellant, vs. NANCY E. SHIPMAN et al. Appellees.

*Opinion filed February 20, 1908.*

1. LEASES—*"oil lease" does not give any title to oil until it is found.* A lease of land for the purpose of prospecting for oil and gas, if of unlimited duration, is a freehold interest in so far as the privilege of prospecting is concerned, but such interest is extinguished when the purpose is accomplished or the work abandoned; such a lease, however, conveys no title to the oil or gas until it is found and reduced to possession.

2. PARTITION—*grant of oil and gas in place does not give any right to partition.* Oil and natural gas in place, though treated as minerals, are, owing to their liability to escape, incapable of ownership distinct from that of the soil, and hence the lessee in an oil and gas lease has no right to compulsory partition of the oil and gas in place, considered separately from the land, or of the land itself.

3. CONTRACTS—*when a provision for revocation precludes relief in the nature of specific performance.* A provision in a lease authorizing the lessee to surrender the lease and determine his liability thereunder at any time upon payment of one dollar does not render the contract void for want of mutuality, but, as distinguished from an option contract for the purchase of land, it deprives the lessee of any relief, in equity, in the nature of specific performance, since he may at any time nullify the effect of a decree by exercising his right of revocation.

APPEAL from the Circuit Court of Crawford county; the Hon. E. E. NEWLIN, Judge, presiding.

The Watford Oil and Gas Company filed its bill in chancery against Nancy E. Shipman and others in the circuit court of Crawford county, praying for an injunction and for partition. A demurrer was sustained to the bill, and the complainant electing to stand by its bill, a decree dismissing the bill for want of equity was entered, from which the complainant below prosecutes this appeal.

From the averments of the bill it appears that the lands in question were owned by Nancy E. Shipman, Lewis Hicks, Betta Douglas and William Hicks, as tenants in common, in the following proportions: Nancy E. Shipman one-tenth and the other three co-tenants three-tenths each, Nancy E. Shipman also holding a life estate in the premises. On February 5, 1906, Nancy E. Shipman and her husband executed an instrument called an "oil lease," by which the whole of the premises were granted, demised and let to one D. R. Guncheon, trustee, for the purpose of drilling and operating for oil and gas, laying pipe lines, building tanks, stations and other structures thereon to take care of the products. It was stipulated that the lease should remain in force for the term of one year from its date and as long thereafter as the premises should be operated for the purpose of producing oil or gas, or so long as oil or gas was produced in paying quantities. The consideration for said lease was one dollar and one-eighth part of all the oil produced and saved from these premises, and a rental of $200 per year for each gas well drilled on the premises the product from which is marketed and used. The lease provided that it was to be void unless a well shall be commenced on the premises within forty-five days of the date thereof, or unless the lessee shall pay at the rate of twenty-five cents per acre, quarterly, for each additional three months such completion is delayed after the expiration of the forty-five days. The

lease provided, also, that the lessee or his successors or assigns should have the right, upon payment of one dollar, to surrender the lease for cancellation, after which all payments and liabilities thereafter to accrue should cease and determine and the lease become absolutely null and void. The lease contained other provisions which we do not regard as material to an understanding of the questions arising in the case.

The lease was duly recorded and by successive assignments the leasehold passed to appellant. It appears that the lessee did not begin the boring of a well within forty-five days of the date of the lease, but that under the terms of the lease $40 was paid to and accepted by Nancy E. Shipman on the 22d day of March, 1906, being rentals in advance at twenty-five cents per acre for the three months next ensuing thereafter. It is averred in the bill that before the expiration of the quarter for which the rentals were paid the lessee tendered Nancy E. Shipman $40 for the quarter commencing June 22, 1906, which was refused by her. The bill alleges that thereafter the amount of money due under the lease was deposited in a bank to the credit of Nancy E. Shipman. The bill avers, in general terms, that all of the conditions of the lease have been fully performed and complied with by the lessee. It is charged in the bill that Nancy E. Shipman and all of the other co-tenants have entered into another agreement with Lemuel Neely, trustee, by which they are attempting to defeat and destroy the rights of the appellant under its said lease, and that Lemuel Neely has employed the St. Mary's Drilling Company and Dick Clover, and that Clover and the drilling company, and other of their agents and employees, have entered upon and taken possession of a portion of said demised premises, and are digging up the ground, drilling and prospecting for oil and gas on said premises, and are threatening to take the oil and gas under the surface of said land and convert the same to their own use, which, it is charged, is waste, and

will result in irreparable injury to the leasehold estate belonging to the appellant.

The prayer of the bill is for an injunction to prevent the acts of alleged waste, and also for a division and a partition of the premises between Nancy E. Shipman and the other co-tenants, and that the interest of Nancy E. Shipman may be designated and set off to her, and that appellant be permitted, by the decree of the court, to go upon such portion of said premises as may be set off to the said Nancy E. Shipman and to develop the same for oil and gas under the terms of said lease.

EAGLETON, BAKER & WESNER, and GEORGE O. DIX, for appellant.

PARKER & NEWLIN, and JAY A. HINDMAN, for appellees.

Mr. JUSTICE VICKERS delivered the opinion of the court:

Appellant had no right to a compulsory partition either of the oil and gas, considered separately from the land, or of the land itself. The lease upon which it predicates its rights is not a conveyance of the interest of one co-tenant in the common property or any part thereof. A lease of land to enter and prospect for oil or gas is a grant of a privilege to enter and prospect, but does not give a title to the oil or gas until such products are found. In the eye of the law oil and natural gas are treated as minerals, but they possess certain peculiar attributes not common to other minerals which have a fixed and permanent situs. Owing to their liability to escape, these minerals are not capable of distinct ownership in place. Oil and gas while in the earth, unlike solid minerals, cannot be the subject of a distinct ownership from the soil. A grant to the oil and gas passes nothing which can be the subject of an ejectment or other real action. It is a grant, not of the oil that is in the ground,

but to such part thereof as the grantee may find. (Barringer & Adams on Mines and Mining, pp. 30, 31; *Dark* v. *Johnston,* 55 Pa. 164; *Shepperd* v. *McCalmont Oil Co.* 38 Hun, 37; *Wood County Petroleum Co.* v. *West Virginia Transportation Co.* 28 W. Va. 210; *Hall* v. *Vernon,* 47 id. 297.) The right to go upon the land and occupy it for the purpose of prospecting, if of unlimited duration, is a freehold interest, (*Bruner* v. *Hicks,* 230 Ill. 536,) but such interest, being vested for a specific purpose, becomes extinct when the purpose is accomplished or the work is abandoned. (1 Current Law, 900.)

Aside from the imperfection in the title of the appellant above pointed out there is another reason why a court of equity will refuse appellant the relief sought. The lease in question contains the following clause: "It is expressly agreed that upon the payment of one dollar by the parties of the second part, their successors or assigns, to the party of the first part, their heirs or assigns, they shall have the right to surrender this lease for cancellation, after which all payments and liabilities thereafter to accrue under and by virtue of its terms shall cease and determine and this lease absolutely become null and void." Under this clause appellant may surrender the lease for cancellation at any time and thereby relieve itself from all future liability under it. The option of appellant to terminate the lease at any time upon payment of one dollar deprives appellant of the right to specific performance, directly or indirectly, until it has performed the contract or placed itself in such position that it may be compelled to perform the contract on its part. If the relief here sought should be granted, appellant, under the cancellation clause of the lease, may nullify the decree by exercising its option not to proceed further. A court of equity will not do a vain and useless thing by rendering a decree settling the rights of parties which one of them may set aside at his will. (Page on Contracts, sec. 1619; *Marble Co.* v. *Ripley,* 77 U. S. 339; *Express Co.* v. *Railroad Co.*

99 id. 191.) In the case last above cited the court, on page 200, said: "But we need not pursue the subject further, because there is one provision of the contract in this case which is fatal to the relief sought. A court of equity never interferes where the power of revocation exists. The contract stipulates that after the first year it shall cease upon payment of $20,000, and interest. This might be made immediately upon the rendition of the decree. The action of the court will thus become a nullity." See, also, 3 Pomeroy's Eq. Jur. sec. 1405, and cases there cited; *Bauer* v. *Lumaghi Coal Co.* 209 Ill. 316.

Cases of this character are distinguishable from a line of cases in this and other States which hold that an option contract for the sale of real estate is valid and may be specifically enforced after the party holding such option has, within the time specified, elected to purchase and pays or tenders the purchase price. Such payment or tender supplies the element of mutuality, and neither party can thereafter recede from the contract. Such contracts have frequently been upheld and enforced in this State. (*Estes* v. *Furlong,* 59 Ill. 298; *Perkins* v. *Hadsell,* 50 id. 216; *Hayes* v. *O'Brien,* 149 id. 403; *Guyer* v. *Warren,* 175 id. 328.) While the power of revocation reserved in this lease has the effect of depriving appellant of equitable remedies in the nature of a specific performance, still the contract is not void for want of mutuality. The reservation of the right to cancel is not an infirmity which renders the contract void *ab initio,* but it deprives the party for whose benefit it is made, of relief in equity in the nature of a specific performance.

We find no error in the decree dismissing this bill. It will therefore be affirmed.                    *Decree affirmed.*