(No. 14719.—Decree affirmed.)
Dolph Conover, Appellee, *vs.* Valmore Parker *et al.* Appellants.

*Opinion filed October 21, 1922—Rehearing denied Dec. 12, 1922.*

Leases—*oil or gas lease does not convey property in the minerals until found.* Oil and gas while in the earth cannot be the subject of a distinct ownership from the soil, as is the case with solid minerals, and a lease of "all the oil and gas in and under the following described tract of land, * * * together with the exclusive right unto the lessee to operate and drill for petroleum and gas," conveys title only to such oil and gas as the lessee may find, but the oil and gas remaining in the soil is the property of the lessor and the interest therein will pass from him by descent or devise of the land. (*Watford Oil Co.* v. *Shipman,* 233 Ill. 9, followed.)

Appeal from the Circuit Court of Crawford county; the Hon. Julius C. Kern, Judge, presiding.

Valmore Parker, and Jones & Lowe, for appellants.

Bradbury, Gaines & Bradbury, for appellee.

Mr. JUSTICE FARMER delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Crawford county granting the relief prayed in a bill in chancery filed by complainant, Dolph Conover, who is appellee here. The appeal was taken to the Appellate Court for the Fourth District and was by that court transferred to this court on the ground that a freehold is involved.

Henry Parker was the owner of 260 acres of land in Crawford county. He and his wife on December 12, 1905, executed and delivered to Charles B. Shaffer an instrument in writing under seal authorizing Shaffer to enter upon the land, prospect and operate it for oil and gas on certain terms and conditions, and the principal question involved for decision is whether that instrument conveyed to Shaffer the oil and gas in place under all the land, or whether it was an oil and gas lease and right to go upon the land to prospect and produce oil and gas if found and to own part of it when produced and taken from the ground.

The instrument is a common form used and generally called an oil and gas lease. It recited that in consideration of one dollar paid Parker and the covenants and agreements of Shaffer in the instrument, Parker "has granted, demised, leased and let, and by these presents do hereby grant, demise and let unto the said lessee, all the oil and gas in and under the following described tract of land, with covenant of general warranty and for the lessee's quiet enjoyment of the term, and that the lessor has the right to convey the premises to the said lessee, together with the exclusive right unto the lessee to operate and drill for petroleum and gas." It was further agreed in the instrument that Shaffer was to lay and maintain pipe lines and other structures mentioned, necessary for operating, and was to have a right of way over the land for purposes necessary to the operation for oil on all the land, which was particularly described. The instrument was to remain in force for ten years, and as long thereafter as oil and gas, or either, was produced

from the land by Shaffer, his heirs, executors, administrators or assigns. By the terms of the instrument Shaffer agreed to deliver to Parker, his heirs or assigns, free of cost, in pipe lines or tanks connected with wells, one-eighth of all oil produced and saved from the premises. He further agreed to complete a well on the land within one year, or make certain payments if the completion of the well was delayed beyond the time agreed upon. The lease, by assignment, passed to and became the property of the Ohio Oil Company.

Parker executed a will in December, 1907, and died in January, 1909. He left a widow, six children and three grandchildren as his only heirs-at-law. By his will he gave his wife, during her natural life, the proceeds, rents, issues and profits, including oil and gas in or under the real estate he died seized of, together with the income derived from any and all of his personal property, moneys or choses in action, to be collected and paid to her by his executors. By the fifth, sixth, seventh, eighth and tenth paragraphs he devised certain real estate owned by him to each of five of his children. By paragraph 9 he devised to Millie Conover, one of his children, forty acres of land described. By paragraph 11 he devised certain land described to his grandchildren. Each of these paragraphs contained the clause, "excepting the oil and gas and mineral therein and thereunder, said above described premises situated in the county of Crawford and State of Illinois, subject, however, to the bequests and devises hereinbefore made for the use and benefit of my said wife, Mary Parker, therein." By paragraph 12 he gave to each of his six children mentioned, including Millie, one-seventh of all the oil, gas and mineral under the real estate he died seized of, subject to his wife's interest. By paragraph 13 he gave his three grandchildren one-seventh of the oil, gas and mineral, subject to the same terms and conditions. The will was duly probated and letters testamentary granted to executors.

Producing wells were sunk on the land and a large amount of oil was taken out. It is not questioned that the royalty agreed upon was paid by the Ohio Oil Company to Parker during his lifetime and to his executors after his death, until the death of the widow. Since her death a portion of the royalty has been claimed by appellee, the surviving husband and sole devisee and legatee of Millie Conover, one of Parker's daughters. His right to it was disputed by the other heirs of Parker. Mrs. Conover died testate before her mother's death. She left her husband surviving but no descendant. By her will she bequeathed all her personal property, "including my share of the proceeds of any and all oil produced from any real estate in which I have any interest, directly or indirectly, by descent or devise or otherwise." She also devised to her husband all real estate she died seized of, in fee simple.

The bill in this case was filed by appellee, the surviving husband of Millie Conover. He claimed that by her father's will she became entitled to one-seventh of Parker's interest in all the oil in and under the lands of which Parker died seized; that he succeeded to his wife's right and interest under her will, and has the right to collect and receive one-fifty-sixth part of the oil produced from the lands of which Parker died seized, after the death of the widow. The bill prays for a decree establishing his right, and that defendants be ordered to account to him for said interest in oil produced since the death of Parker's widow. The answer averred that by the instrument executed December 12, 1905, by Parker and wife to Shaffer, Parker conveyed to Shaffer all the oil and gas in place and had no title to it after said conveyance but the title vested in Shaffer; that the only interest Parker had after the conveyance was the right to receive free of cost, in pipe lines or tanks, one-eighth of the oil produced and saved; that after the oil was taken from the earth it became personal property and the right to collect for it was a mere chose in action; that the deliv-

ery of the oil in pipe lines or tanks was the manner of paying him the purchase price for the oil. The answer avers that Parker's will did not convey any interest in the oil; that by paragraph 14 of his will he gave his personal property to his heirs living at the death of his wife; that Mrs. Conover died before the widow's death, leaving no descendants, and she took nothing by virtue of paragraph 14; that she had no interest in the oil and that her husband acquired no interest therein by her will. The court found and decreed that Mrs. Conover on the death of her father became seized of the real estate devised to her and of one-seventh of all the oil in and under all the lands of which her father died seized, subject to the rights of her mother and the Ohio Oil Company; that upon her death the land devised to her, and one-seventh of the oil in and under all the real estate her father owned, by her will passed to her husband, subject to the widow's and the Ohio Oil Company's rights, and it was ordered that the Ohio Oil Company deliver to appellee one-fifty-sixth part of the oil produced since the death of Parker's widow.

Appellants' contention is that Henry Parker conveyed all the oil and gas to Shaffer; that after the execution and delivery to Shaffer of the instrument, in December, 1905, the entire interest of Parker in the oil and gas in and under the land vested in Shaffer, and the only right retained by Parker was the right to receive one-eighth of the oil when pumped from the earth and placed in pipe lines or tanks in payment of the purchase price. Appellee contends that Parker did not convey to Shaffer the oil and gas in place in and under the land; that the title to the oil and gas remained in him; that the interest conveyed Shaffer was a leasehold and exclusive right to enter upon the land, prospect it and drill wells for oil, and if oil was found, to pump it into tanks or pipe lines and deliver one-eighth of it to Parker. Both parties agree that the provisions of Parker's will mentioned in the bill do not need construction.

We are of opinion *Watford Oil and Gas Co.* v. *Shipman,* 233 Ill. 9, is conclusive against appellants.   In that case the instrument signed by the land owner, called an oil lease, was, in effect, substantially like the one here involved.   The court held it conveyed no interest in the land, and said: "A lease of land to enter and prospect for oil or gas is a grant of a privilege to enter and prospect but does not give a title to the oil or gas until such products are found.   In the eye of the law oil and natural gas are treated as minerals, but they possess certain peculiar attributes not common to other minerals which have a fixed and permanent situs.   Owing to their liability to escape, these minerals are not capable of distinct ownership in place.   Oil and gas while in the earth, unlike solid minerals, cannot be the subject of a distinct ownership from the soil.   A grant to the oil and gas passes nothing which can be the subject of an ejectment or other real action.   It is a grant, not of the oil that is in the ground but to such part thereof as the grantee may find.   (Barringer & Adams on Mines and Mining, pp. 30, 31; *Dark* v. *Johnston,* 55 Pa. 164; *Shepperd* v. *McCalmont Oil Co.* 38 Hun, 37; *Wood County Petroleum Co.* v. *West Virginia Transportation Co.* 28 W. Va. 210; *Hall* v. *Vernon,* 47 id. 297.)   The right to go upon the land and occupy it for the purpose of prospecting, if of unlimited duration, is a freehold interest, (*Bruner* v. *Hicks,* 230 Ill. 536,) but such interest, being vested for a specific purpose, becomes extinct when the purpose is accomplished or the work is abandoned.—1 Current Law, 900."   There are numerous other cases in Ohio and Indiana not cited in the opinion which sustain the decision.   (See 18 R. C. L. sec. 110, p. 1206.)   If, as appellants insist, decisions in other States are to the contrary, this court is bound by its own decision on the identical question.

The decree of the circuit court is affirmed.

*Decree affirmed.*